UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| HORACE SCOTT CLARK and KATHERINE ANN CLARK, | ) ) ) |
| Plaintiffs, | ) Civil Action No. 5:08-434-JMH ) ) |
| V. | ) ) |
| BUCYRUS INTERNATIONAL, ET AL., | ) **MEMORANDUM OPINION AND ORDER** ) ) |
| Defendants. | ) ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Defendants' Bucyrus International, Inc. ("Bucyrus"), Bucyrus Field Services, Inc., f/k/a Minserco, Inc., ("Minserco"), Bucyrus Holdings, LLC, and Bucyrus America, Inc. (collectively, the "Bucyrus Entities") Motion to Dismiss on grounds of *forum non conveniens* [Record No. ("RN") 29].[1] Plaintiffs responded [Record No. 38] and Defendants replied [Record No. 41]. This matter is now ripe for review.

**BACKGROUND**

Plaintiffs filed this action against the Bucyrus Entities,

---

[1] Subsequent to the filing of the Bucyrus Entities' Motion to Dismiss on grounds of *forum non conveniens*, Plaintiffs voluntarily stipulated to the dismissal of their claims against Bucyrus Holdings, LLC and Bucyrus America, Inc., as reflected in the Order dated February 23, 2009 [RN 32]. The remaining defendants bringing this Motion to Dismiss being only Bucyrus International and Minserco, the Court will collectively refer to the two defendants as "Defendants" throughout the duration of this Memorandum Opinion and Order.

Martin Marietta Materials, Inc. ("MMM"), and Bahama Rock, Ltd.[2] alleging breach of contract, negligence, negligent misrepresentation, fraudulent misrepresentation, fraud, fraudulent inducement and loss of consortium. Plaintiffs' claims arise out of Plaintiff Horace Scott Clark's ("Clark") employment with Bucyrus and Minserco.

An understanding of the relationships between the various defendants is useful in understanding Plaintiffs' claims. Bucyrus is a designer and manufacturer of high productivity mining equipment for surface and underground mining, and a producer of aftermarket replacement parts and service for its equipment. RN 12 at ¶23. Bucyrus and its subsidiaries have manufacturing facilities and service and sales centers throughout the United States, including Alabama, Arizona, Colorado, Florida, Illinois, Kentucky, Pennsylvania, Texas, Utah, West Virginia, Wisconsin, and Wyoming. Bucyrus conducts a portion of its aftermarket activities through its subsidiary, Minserco. Minserco owns and operates an office in Mt. Sterling, Kentucky, specializing in design, manufacturing, and servicing of high productivity mining equipment. MMM produces construction aggregates used primarily for construction of highways and other infrastructure projects. MMM has more than 285 quarries and distribution facilities in twenty-eight states, the Bahamas,

---

[2] Plaintiffs voluntarily dismissed their claims against Bahama Rock, Ltd., as reflected in the Order dated March 17, 2009 [RN 39].

and Nova Scotia. MMM is authorized to do business in Kentucky, and has facilities in Paducah, Fredonia, Petersburg, and Smithland, Kentucky. Bahama Rock, who is no longer a party to this action, is a Bahamian corporation that is a wholly owned subsidiary of MMM.

Brian Groff of Minserco's Mt. Sterling, Kentucky, office interviewed Clark at the Mt. Sterling office. Shortly thereafter, Minserco mailed an offer of employment to Clark from its Mt. Sterling office, and Clark mailed a signed copy back to the Mt. Sterling office. Clark was hired by Minserco to serve as a dragline electrical supervisor for a limestone mining operation in Freeport, Grand Bahamas (the "Mine"). Minserco operated the Mine, which is owned by Bahama Rock, a subsidiary of MMM, pursuant to the terms of a Limestone Extraction Agreement ("LEA") between Minserco, MMM, and Bahama Rock.

There is some dispute over who was to secure the permits and licenses necessary to effectuate Plaintiffs' legal residence and employment status in the Bahamas. Clark contends that during his interviews at Minserco's office in Mt. Sterling, Bucyrus and Minserco employees Brian Groff, Kenneth Roberts, Lin Kramer, and Robert Jelinek represented that Bucyrus and Minserco would be responsible for obtaining the permits and licenses necessary for Clark to legally reside and be employed in the Commonwealth of the Bahamas. RN 38, Ex. F at ¶10. The Bucyrus Entities argue that pursuant to the LEA, MMM and Bahama Rock were responsible for

3

obtaining all necessary immigration and work permits, licenses, and permissions for Minserco employees to work in the Bahamian Mine. RN 29 at 3.  Irrespective of who was responsible for procuring the necessary permits from the Bahamas, Clark states that in May 2007, Groff advised him by telephone and in writing that Clark was granted status in the Bahamas authorizing him to live and work there as an employee of Bucyrus and Minserco.  RN 39, Ex. F at ¶14.

Clark began work in the Bahamas in late May 2007.  On September 1, 2007, he was involved in a motor vehicle accident in Freeport, Bahamas, which resulted in the death of a Bahamian national.  On September 10, 2007, Clark was arrested and charged with "killing in the course of dangerous driving, contrary to section 44(1) of the Road Traffic Act, Chapter 220."  RN 38, Ex. N.  Clark was jailed, only to be released later that day after posting bail. *Id.*  On September 11, 2007, Clark's bail was revoked on the ground that he had no "valid legal status [i]n the Bahamas," and he was again incarcerated in Freeport.  *Id.*  Clark was transferred to Nassau where he spent approximately nine days in custody until he was again released on bail on September 20, 2007.  Clark left the Bahamas on September 20, 2007.  Minserco continued to pay Clark his salary until October 2008, when it terminated his employment due to his inability to fulfill his position in the Bahamas.

Clark contends that subsequent to his hiring, Minserco, Bucyrus, and MMM "continuously negligently and/or fraudulently

4

misrepresented from Kentucky that they secured the necessary permits and licenses authorizing him to legally reside and be gainfully employed in the Bahamas." Clark complains that he relied on the misrepresentations of Defendants, resulting in his incarceration for illegally residing and working in the Bahamas. RN 38 at 3. A September 18, 2008, letter from Roosevelt H. Newbold, Director of Immigration at the Freeport, Grand Bahama, Immigration Department, to Clark's Bahamian attorney, Carlson H. Shurland, indicates that at no time was Clark legally employed in the Bahamas. RN 38, Ex. M.

## DISCUSSION

Defendants move the Court to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(3) and the doctrine of *forum non conveniens*. "The principle of forum non conveniens is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507 (1947). At the outset of considering a motion to dismiss under the doctrine of *forum non conveniens,* the court must determine whether there is an adequate, available alternate forum in which the defendant is amendable to process. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 n.22 (1981). The court next considers the private interests of the litigants, including factors such as ease of access to sources of proof, availability of compulsory process to secure attendance of

5

the unwilling, the cost of obtaining the attendance of willing witnesses, and the possibility of viewing the premises if such viewing is appropriate. *Gulf Oil,* 330 U.S. at 508; *see also Duha v. Agrium, Inc.,* 448 F.3d 867 (6th Cir. 2006). Factors of public interest are also to be considered, and include considerations such as imposing jury duty upon the people of a community with no relation to the litigation and having localized controversies decided at home. *Id.* While these factors are certainly to be considered and weighed, a plaintiff's choice of forum should not be disturbed unless the balance of the factors weighs strongly in favor of the defendant. *Id.* A court should only dismiss a case on grounds of *forum non conveniens* "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co.,* 454 U.S. at 249.

Because Defendants have not demonstrated that the Bahamas are an available alternate forum, and because a balancing of the *Gulf Oil* factors does not weigh in favor of dismissal, the Court will deny Defendants' Motion to Dismiss.

**<u>Available Adequate Alternative Forum</u>**

Defendants propose the Bahamas as an available adequate alternative forum for this litigation. An alternative forum is

adequate if the defendants are amenable to service of process in that jurisdiction. *Piper Aircraft Co.*, 454 U.S. at 255 n.22. In their Reply brief, the Bucyrus Entities state that they, Minserco, MMM, and Bahama Rock, who is no longer a party to this action, "are **not unwilling** to receive service of process in the Bahamas." RN 41 at 6 (emphasis in original). The Court reads this assertion by the Bucyrus Entities to mean that the Bucyrus Entities, Minserco, and MMM,[3] the remaining defendants in this action, are amenable to service of process in the Bahamas, which completes the first step of this Court's inquiry into whether the Bahamas is an adequate and available alternate forum for this litigation.

Defendants cite *Tucker v. Whitaker Travel, Ltd.*, 620 F. Supp. 578 (E.D.Pa. 1985), *aff'd* 800 F.2d 1140 (3d Cir. 1986) (finding that Bahamas was adequate forum for personal injury action against Commonwealth of the Bahamas Ministry of Tourism for injuries suffered by plaintiff while horseback riding in the Bahamas) and *Miyoung Son v. Kerzner Intern. Resorts, Inc.,* 2008 WL 4186979 (S.D. Fla. 2008) (dismissing claims against Bahamian corporations to be refiled in Bahamas), for the proposition that United States courts

---

[3] The Court notes, however, that the Bucyrus Entities did not provide an affidavit from MMM representing that it is amenable to service of process in the Bahamas or that it agrees to submit itself to the jurisdiction of the Bahamas, nor did MMM file any documentation supporting the Bucyrus Entities's assertion regarding MMM. This point is inconsequential, however, as the Court determines that Defendants have failed to show that the Bahamas are an available forum for this litigation.

have recognized Bahamian courts as providing an adequate legal forum in some cases. While other courts have recognized, and in fact this court does not dispute the adequacy of the Bahamian courts, the Court is not convinced that the Bahamian courts would be an available forum for this litigation.

Plaintiffs produced an affidavit from Emerick Abbott Knowles, an attorney who has practiced law in the Bahamas for thirty-five years. Mr. Knowles declares as follows:

> In light of the fact the Plaintiffs and Defendants are residents outside the jurisdiction of The Bahamas, in order for this action to proceed in The Bahamas against the Defendants, Bucyrus International, Inc., Bucyrus Field Services, Inc. and Martin Marietta Materials, Inc., it would be necessary for the Plaintiffs to obtain leave of the Bahamian Court to commence proceedings in The Bahamas against these Defendants and to obtain leave of the Court to serve Notice of the proceedings on the Defendants pursuant to O.11 r.1 of the Rule of the Court. O.11 r.1 which is attached hereto as Exhibit "A," gives the Court authority to grant leave pursuant to paragraphs (c), (g), (h) and (j) of the Order. However, it is within the Court's discretion whether to grant the requisite leave to a foreign resident to pursuant an action against foreign defendants. If the Bahamian court does not grant leave, the Plaintiffs will be without a remedy at law in the Bahamian Courts.

RN 38, Ex. I at 3. Review of Mr. Knowles's affidavit and the Bahamian statute attached thereto leads this Court to conclude that the Bahamian courts may not be an available forum for Plaintiffs to pursue this litigation. Defendants' failure to rebut or dispute Mr. Knowles's statement regarding the Bahamian court's discretion to hear this matter further convinces the Court that the Bahamas

8

may not be a forum available to Plaintiffs. *See In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1164 (5th Cir. 1987) ("[T]he moving defendant must establish that an adequate and available forum exists as to all defendants if there are several.")

An alternate forum is not an available forum if it "does not permit litigation of the subject matter of the dispute," *Piper Aircraft Co.,* 454 U.S. at 255 n.22, and it appears possible that the Bahamian courts could decline to permit the instant litigation to proceed in that forum, leaving Plaintiffs without an available forum.

### *Gulf Oil* **Factors**

In addition to finding that Defendants have not demonstrated that the Bahamian courts would be an available alternate forum, the Court also finds that a balancing of the private and public factors to be considered on a motion to dismiss for *forum non conveniens* weigh in favor of litigating this action in this forum. *See Gulf Oil,* 330 U.S. at 508.

At its very core, Plaintiffs' case is one for breach of contract, negligence, and fraud, all stemming from Defendants' alleged failure to secure the permits and licenses necessary for Plaintiffs to live and work in the Bahamas, as promised. While evidence of the existence or nonexistence of permits and licenses secured for the Plaintiffs, or Defendants' attempts to secure such permits, medical and toxicology records of Clark, and documents

9

from the Bahamian courts may in fact be located in The Bahamas, Defendants have failed to demonstrate that any such evidence could not be obtained if this litigation continued in Kentucky. In fact, Plaintiffs have previously obtained records from the Bahamas Immigration Department, the Bahamian Magistrate's Court, and Clark's medical providers in the Bahamas. Furthermore, much of the evidence relevant to Plaintiffs' claims, Clark's employment records and contract with Defendants and medical records from Clark's treatment in his home state of Texas, are located in the United States.

Witnesses whose testimony will be relevant to this action are located both in the Bahamas and in the United States. A representative from the Bahamas Immigration Department will be required to authenticate and perhaps explain the permit and licensing process, as well as any immigration applications that were submitted on behalf of Plaintiffs, although the Court questions whether four employees will be necessary, as advanced by Defendants. Similarly, the testimony of a representative from Bahama Rock will be required to speak to the efforts of Bahama Rock to procure legal immigration status for Plaintiffs. Defendants also cite a need to call four witnesses from the Royal Bahamas Police Department, however, the Court questions the need for so many officers. Defendants have failed to allege, much less carried their burden to show, that any witness would be unwilling to

10

testify and that compulsory process would be required. The Court will not attach much weight to the compulsory process factor because no unwillingness to testify has been shown. *See Duha*, 448 F.3d at 877. Finally, in the event that witnesses located in the Bahamas were willing to appear in this Court to testify, Defendants have failed to establish that the costs associated with their appearances would be burdensome.

Many of the witnesses with firsthand knowledge of the core of this dispute, the alleged promise and failure of Clark's employers to secure legal status for Plaintiffs in the Bahamas, reside in the United States. Employees of the Bucyrus Entities with knowledge relevant to this action, including Brian Groff, Lin Kramer, Kenneth Roberts, Robert Jelinek, Lisa Reinhardt, and David Shepherd are residents of the United States. With the exception of Kenneth Roberts who lives in Illinois, the employees all reside in Kentucky and are employed at Bucyrus and Minserco's Kentucky offices. Additionally, the Plaintiffs and many of Clark's treating physicians whose testimony will be relevant to the issue of damages are residents of Texas. On balance, the majority of the witnesses with information relevant to this case are residents of the United States, with several being found in the Eastern District of Kentucky.

Defendants also point to an inability to view the conditions of the Bahamian prison where Clark was incarcerated if the trial

11

were held in Kentucky as a factor supporting dismissal of the action in this forum. The Court finds that this factor does not weigh in favor of a change of forum, as evidence of the conditions of the Bahamian prison can be admitted through witness testimony or videotape of the prison conditions. Also, the ability to view the prison in its current condition is likely to be irrelevant to the conditions of the prison at the time of Clark's incarceration in September of 2007.

Public interest factors also weigh in favor of retaining this case in its current forum. This case involves United States citizens bringing suit against United States corporations, and "[t]here is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica*, 382 F.3d 1097, 1104 (11th Cir. 2004) (quoting *Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1311 (11th Cir. 2002)). This action has several ties to the Eastern District of Kentucky, including the facts that Clark was interviewed in Kentucky, the offer of employment was extended by Defendants from their Mt. Sterling, Kentucky office, and Bucyrus and Minserco maintain an office in Mt. Sterling. The ties to this District demonstrate that jurors called into service for trial of this action would have an interest in the litigation, unlike

12

Bahamian jurors who would have no interest in litigation between United States residents.

## CONCLUSION

Defendants have not demonstrated that the Bahamian courts would be an available forum for this litigation. Furthermore, both the private and public factors set forth in *Gulf Oil* weigh in favor of retaining this action in the current forum, especially considering that "Supreme Court case law requires that the district court give appropriate heightened deference to a plaintiff's choice of a home forum." *Duha*, 448 F.3d at 879. Defendants having failed to establish that litigation in this forum is so oppressive and vexatious "as to be all out of proportion to plaintiff's convenience," the Court will deny Defendants' Motion to Dismiss for *forum non conveniens*. *Duha,* 448 F.3d at 874 (quoting *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

Accordingly, and for the foregoing reasons, **IT IS ORDERED**:

That Defendants' Motion to Dismiss for *forum non conveniens* [RN 29] shall be, and the same hereby is, **DENIED**.

This the 12th day of June, 2009.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge