```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF KENTUCKY
                   CENTRAL DIVISION at LEXINGTON
HORACE SCOTT CLARK and             )
KATHERINE ANN CLARK,               )
                                   )  Civil Action No. 5:08-434-JMH
      Plaintiffs,                  )
                                   )
V.                                 )
                                   )
BUCYRUS INTERNATIONAL, ET AL.,     )  MEMORANDUM OPINION AND ORDER
                                   )
                                   )
      Defendants.                  )
                                   )
```

                    **    **    **    **    **

This matter is before the Court on Plaintiffs' Motion for Leave to Amend the Complaint [RN 50]. Defendants responded in opposition [RNs 54 and 55] and Plaintiffs replied [RN 57]. This matter is now ripe for review.

## BACKGROUND

The following facts are as averred in Plaintiffs' Complaint. This case arises out of the employment relationship between Horace Scott Clark ("Clark") and Bucyrus Field Services, Inc. f/k/a Minserco ("Minserco") and Bucyrus International, Inc. ("Bucyrus"). On or about February 21, 2007, Minserco and Bucyrus offered employment to Clark at its offices in Mt. Sterling, Kentucky. Clark accepted this offer of employment and agreed to serve as a Dragline Electrical Supervisor at the Bahama Rock, Ltd. project ("BRL Facility") at Freeport Harbor in the Bahamas. As part of their employment agreement, Minserco represented to Clark that it would be responsible for obtaining the work permits and licenses

necessary for Clark to legally reside and work in the Bahamas.

Prior to this transaction, Minserco entered into a "Limestone Extraction Agreement" (the "LEA Agreement") with Martin Marietta Materials, Inc. ("MMM") and Bahama Rock, Ltd. ("BRL"). Based on the LEA, Plaintiffs claim it was standard practice for BRL to apply for and obtain immigration permits and visas on behalf of Minserco personnel to operate the BRL Facility.

On or about September 1, 2007, Clark was involved in a motor vehicle accident in Freeport, Bahamas which involved the death of a Bahamian national. During the investigation of the accident, Bahamian authorities discovered that Clark was in the Bahamas illegally. Clark did not possess the necessary work permits required for him to reside and be gainfully employed in the Bahamas. On or about September 10, 2007, as a result of Clark's violation of Bahamian immigration law, Clark was incarcerated in Fox Hill Prison in Nassau, Bahamas.

In their initial complaint, filed September 9, 2008, Plaintiffs asserted claims of breach of contract, negligence, negligent misrepresentation, fraud, fraudulent misrepresentation, fraudulent inducement, and consortium against Bucyrus and Minserco. Plaintiffs also asserted claims of negligence, vicarious liability, and consortium against MMM. Plaintiffs now argue that the Court should grant leave to amend their complaint based on additional facts learned over the course of discovery. Plaintiffs seek to add

claims of civil conspiracy and gross negligence against Bucyrus and Minserco.  Plaintiffs also seek to add claims against MMM for civil conspiracy, gross negligence, and fraud. Plaintiffs' amended complaint seeks punitive damages in addition to the damages requested in the first complaint.

For the reasons that follow, the Court finds that Plaintiffs' claims are not futile and that amendment of the complaint is not unduly burdensome to Defendants.  Accordingly, the Court grants leave to amend the complaint.

## DISCUSSION

**Legal Standard for Rule 15(a)**

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks to amend its pleading by leave of court, "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The purpose of the Rule "is to reinforce the principle that cases should be tried on their merits rather than on the technicalities of pleadings." *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir. 1987)(quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).  Further, the Sixth Circuit prefers "liberality in allowing amendments to a complaint." *Janikowski,* 823 F.2d at 951 (*quoting Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986)).

Although the Rule favors a policy of permitting leave to amend, the Court's permission is not automatic.  The Court, in its

discretion, may balance several factors before deciding whether to grant a party leave to amend its pleading.  In *Foman v. Davis*, the Supreme Court provided a general standard for federal courts to use in applying Rule 15(a):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."

371 U.S. 178 (1962).

Here, Defendants contest Plaintiffs' proposed amendment based on grounds that the proposed amended complaint is both futile and will unduly prejudice the defendants.  Plaintiffs argue that none of the factors relevant to the Rule 15(a) *Foman* inquiry apply, and their motion for leave to amend should be granted.

**Legal Standard for Deciding Futility of Amendment**

The Court may deny a motion to amend a party's pleadings pursuant to Rule 15(a) if the proposed amendment could not withstand a motion to dismiss. *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation, Dep't of HUD, City of Louisville*, 632 F.2d 21, 23 (6th Cir. 1980).  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Melibov v.*

*Allen*, 411 F.3d 712, 717 (6th Cir. 2005). Furthermore, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id*. A complaint should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)(*quoting Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).

Plaintiffs and Defendants dispute whether Plaintiff's amended complaint is futile as to additional claims against Defendants alleging civil conspiracy and gross negligence.

**Futility as to the Proposed Civil Conspiracy Claim**

The Kentucky Supreme Court defined civil conspiracy as "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or to do a lawful act by unlawful means. *Smith v. Board of Education of Ludlow, Ky.*, 94 S.W.2d 321, 325 (Ky. 1936). In *Montgomery v. Milam*, the Kentucky Supreme Court reaffirmed the *Smith* decision and emphasized that the proponent must show an unlawful or corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act in order to prevail on a claim of civil conspiracy. *Montgomery v. Milam*, 910 S.W.2d 237, 239 (Ky. 1995). In addition, the action for damages in a civil conspiracy claim is the act or acts committed in pursuance of the

conspiracy and not the conspiracy itself.  *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887 (Ky. Ct. App. 1945).  Therefore, to prove civil conspiracy, Plaintiffs must show an agreement between the parties to do an unlawful act or acts and that damages resulted from the unlawful act or acts committed pursuant to the conspiracy.

Here, Plaintiffs' proposed amendment to their complaint alleges that Bucyrus and/or Minserco, at the direction and insistence of MMM, agreed to require Plaintiffs to remain at the BRL Facility, so that Mr. Clark could continue to serve as a Dragline Electrical Supervisor to Defendants' benefit and Plaintiffs' detriment.  Plaintiffs argue that Defendants required that they remain in the Bahamas despite Defendants' knowledge that Plaintiffs did not have the proper work permits or licenses.  In addition, Plaintiffs' proposed amendment alleges that Defendants ignored express instructions from the Bahamian Immigration Department that Plaintiffs were not permitted to remain and work in the Bahamas while their applications were being processed.  Plaintiffs urge that these allegations sufficiently state a claim for civil conspiracy.

However, Defendants argue that Plaintiffs' claims of civil conspiracy are insufficient to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Specifically, Defendants argue that Plaintiffs have failed to allege any unlawful act committed by the

Defendants.

Generally, a complaint must allege all of the elements of a conspiracy in order to state a claim for civil conspiracy. *Rutherford v. Presbyterian-Univ. Hosp.*, 612 A.2d 500 (Pa. Super. 1992). There must be an agreement between two or more persons to injure another by unlawful action. *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). However, express agreement is not required to prove the existence of a civil conspiracy. Rather, it must be shown that there existed a single plan and that the conspirators shared in a general conspiratorial objective. *See id.*

Defendants' response does not dispute that an agreement may have existed to satisfy a claim of civil conspiracy. Instead, Defendants argue that there was no unlawful act committed pursuant to the conspiracy. At most, Defendants argue, they were aware that an unlawful act was being committed by allowing Plaintiffs to remain in the Bahamas knowing that Plaintiffs were violating that country's immigration laws. In support of their argument, Defendants rely on *James v. Wilson*, 95 S.W.3d 875 (Ky. Ct. App. 2002). In that case, the facts indicated that certain defendants knew that an illegal act was occurring. Specifically, the plaintiffs in the *James* case alleged that a civil conspiracy existed because a group of students knew of another student's plan to bring guns to his high school to shoot his fellow students. There, the appellate court held that "the law in Kentucky requires

the actual commission of the tortious act or a concert of action where substantial assistance has been provided in order for liability to attach based on a civil conspiracy theory." *Id.* at 897-98.  Defendants argue that, similar to *James*, Plaintiffs have failed to allege any unlawful action taken in furtherance of an alleged conspiracy which resulted in damages to Plaintiffs.

Plaintiffs distinguish *James* from this case by noting that the Court in *James* was reviewing the lower court's grant of summary judgment to the defendants.  The standard in this case is different. Here, the standard is one of plausibility.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Plaintiffs also rely on the Court's discussion of *Farmer v. City of Newport*, 748 S.W.2d 162 (Ky. Ct. App. 1988) in the *James* case.  In *Farmer*, the Court referenced the *Restatement (Second) of Torts,* § 876, to illustrate the concept of a "concert of action," which allowed Plaintiffs in that case to assert a claim against various mattress manufacturers who, acting jointly, manufactured and/or marketed an unreasonably dangerous product.  *Id.* at 164. The relevant section of the Restatement cited in *Farmer* provides the following:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a)

>does a tortious act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct separately considered, constitutes a breach of duty to the third person.

*Id.* (quoting *Restatement (Second) of Torts,* § 876).

In this case, the facts alleged in the proposed amended complaint render it plausible that Defendants engaged in a civil conspiracy. The facts alleged in the proposed amended complaint go further than what Defendants suggest. This case can be distinguished from *James*, where the defendants may have had knowledge that a student planned to bring guns into the school but rendered that student no substantial assistance in the school shooting. Here, Defendants' alleged misrepresentation and concealment of Plaintiffs' immigration status led to Plaintiffs' continued residence in the Bahamas. This situation is unlike *James* because Plaintiffs did not know they were violating Bahamian law during their residence and work in the Bahamas. Defendants were more than just mere observers to Plaintiffs' violation of the Bahamian immigration laws. Plaintiffs' allegations of civil conspiracy against Defendants in this case is based on Defendants' intentional omission or passive concealment of material facts, i.e., Plaintiffs' unlawful status in the Bahamas. *See Governors Grove Condo. Ass'n v. Hill Dev. Corp.*, 414 A.2d 1177, 1182 (Conn. Super. 1980)(where the Court held that an "overt act" was

sufficiently alleged when builder and developer fraudulently concealed repair defects from purchasers).

In *People's Bank of Northern Ky. v. Crowe Chizek and Co. LLC*, 277 S.W.3d 255 (Ky. Ct. App. 2008), the Court referenced both *Farmer* and *James* and stated that "mere negligence is not sufficient to support a claim for civil conspiracy." *Id.* at 261. "Rather, there must be proof that the defendants acted tortiously pursuant to a common design, or that they rendered substantial assistance to others to accomplish the tortious act." *Id.* Here, Plaintiffs allege that Defendants were knowing participants to Plaintiffs' continued violation of Bahamian law. Plaintiffs have sufficiently stated a claim that Defendants knowingly concealed Plaintiffs' status so as to retain Mr. Clark's employment in the Bahamas to operate Defendants' facility.

Moreover, the LEA Agreement created a contractual relationship between Bucyrus/Minserco and MMM/BRL providing mutual covenants and obligating MMM and/or BRL to apply for and obtain proper immigration documentation for Minserco's personnel, including Plaintiffs. Defendant MMM breached its duty by failing to obtain the necessary work permits for Plaintiffs. Defendants Bucyrus and Minserco were also aware of Plaintiffs' immigration status in the Bahamas, having been forwarded a letter dating June 21, 2007 from the Assistant Director of Immigrations for the Commonwealth of the Bahamas advising Defendants that Plaintiffs should not be in the

Bahamas while his applications are being processed. The facts of the proposed amended complaint allege that Defendants encouraged their employees to remain and work in the Bahamas, despite not being authorized to remain in the Bahamas.

It should also be noted that *Smith* allows a Plaintiff to state a claim for civil conspiracy when Defendants commit a lawful act by unlawful means. *Smith*, 94 S.W.2d at 325. Here, Plaintiffs state that Defendants engaged in a lawful act, the operation of the BRL Facility in the Bahamas. However, Defendants used unlawful means – they continually concealed Plaintiffs' unlawful status from them. *See Governor's Grove Condo. Ass'n*, 414 A.2d 1177.

In sum, Plaintiffs' amended complaint sufficiently states a claim for civil conspiracy. First, the corporate defendants in the case satisfy the requirement that there are two persons. The Bucyrus Entities (Bucyrus and Minserco), both Delaware corporations, are organizations separate from their co-defendant, MMM, a North Carolina corporation. Second, it is plausible that there was an explicit or implicit agreement between the two corporations. Although Defendants knew Plaintiffs were in the Bahamas unlawfully, they ignored the instructions from Bahamian officials and required Plaintiffs to remain in the Bahamas to operate the BRL facility. Finally, the concealment of their immigration status to Plaintiffs provides the unlawful act necessary to state a claim for civil conspiracy. In the

alternative, Defendants' concealment of Plaintiffs' status provided the unlawful means to engage in a lawful act, i.e., the operation of the BRL Facility.

**Futility as to Proposed Gross Negligence Claims**

In *Cooper v. Barth*, the Kentucky Supreme Court defined gross negligence as "being something more than the failure to exercise slight care . . . there must be an element either of malice or willfulness or such an utter and wanton disregard of the rights of others as from which it may be assumed that the act was malicious or willful." *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 51 (Ky. 2003)(*quoting Cooper*, 464 S.W.2d 233, 234 (Ky. 1971)). Furthermore, the Court defined gross negligence in the context of punitive damage awards in *Horton v. Union Light, Heat & Power Co.* Gross negligence requires a finding of "failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety or property of others." *Horton*, 690 S.W.2d 382, 389-90.

Defendants argue that Plaintiffs' claims for gross negligence are futile because they have failed to identify how Defendants' conduct constituted a disregard for the life, safety or property of Plaintiffs. However, assuming the facts alleged in the light most favorable to Plaintiffs, Plaintiffs' claims of gross negligence are not futile. Plaintiffs rely on the letter submitted to Defendants

from the Assistant Director of Immigration for the Commonwealth of the Bahamas. That correspondence placed Defendants on notice that the Bahamian government required Plaintiffs to obtain the proper permits and licenses before taking residence and working in the Bahamas. Plaintiffs allege that Defendants consciously disregarded these instructions and knowingly concealed the immigration status of Plaintiffs. This exposed Plaintiffs to prosecution, deportation, and/or incarceration for violation of Bahamian law, all of which were foreseeable consequences of Defendants' actions. Thus, Plaintiffs' factual allegations render their gross negligence claims at least plausible.

**Undue Prejudice to Defendants**

Defendants assert that Plaintiffs' Motion for Leave to Amend Complaint should be denied because of the undue prejudice it would place on Defendants. To support this argument, Defendants note that Plaintiffs initially filed a 392 paragraph complaint. Plaintiffs now seek to file a 370 paragraph amended complaint, which reorganizes the facts from the original complaint and adds additional causes of action. Plaintiffs, however, claim that no undue prejudice will accrue to Defendants because the new factual allegations and counts proposed in the amended complaint were based on facts already adduced in discovery. Therefore, Plaintiffs claim that Defendants will not be prejudiced by the Court granting Plaintiffs' motion to amend their complaint.

"The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft*, 689 F.2d at 639. *Tefft* dealt with a plaintiff whose initial complaints against DEA officers set out facts consistent with common law tort claims. The District Court granted the DEA officers summary judgment based on the absolute immunity of federal officers acting within the scope of their duty from damage suits arising from common law torts. *Id.* at 638. The District Court also denied Tefft's request to amend his complaint to assert a constitutional tort.

The Court of Appeals for the Sixth Circuit held that the District Court judge abused his discretion by denying the plaintiff's requested amendment. The facts Tefft set forth in his original complaint supported the cause of action for his amended complaint. The amended cause of action was not so different as to cause prejudice to the defendants. *Id.* at 63. The Court of Appeals also disregarded the time that had elapsed between Tefft's motion and the filing of the original complaint. More than four years passed between the original complaint and Tefft's motion to amend his complaint to allege a constitutional tort. Still, the Court of Appeals held the District Court abused its discretion by not allowing the plaintiff to amend his complaint.

In this case, there is minimal risk of undue prejudice to Defendants. Plaintiffs' claims in the amended complaint arose out

14

of the same occurrence set forth in the original complaint. *See Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479 (6th Cir. 1973). Defendants were "aware of the fact situation upon which the amended complaint was based." *Id.* at 484. Plaintiffs added facts and claims, but they arose out of the same occurrence, i.e., Defendants' misrepresentation and concealment of Plaintiffs' unlawful status while Clark was working in the Bahamas. The claims Plaintiff seek to add are based on information that was adduced during discovery, meaning that little, if any, additional discovery for these new claims seems necessary. Finally, the Court rejects Defendants' argument that the motion should be denied because of the length of both complaints. Although allowing the amended complaint might be inconvenient and cause Defendants delay in reviewing the specific factual allegations of the amended complaint, this burden is not undue. "Delay by itself is not sufficient reason to deny a motion to amend." *Id.*

**Proposed Punitive Damages Element**

Defendants' response does not explicitly address the issue of the award of punitive damages. This issue, however, arises out of the previous discussion of the allegations of gross negligence against Defendants. KRS § 411.184 allows for an award of punitive damages if a plaintiff proves by clear and convincing evidence that the defendant from whom such damages is sought acted toward the plaintiff with fraud, oppression, or malice. Punitive damages are

15

available so long as gross negligence is shown. *Williams v. Wilson*, 972 S.W.2d, 262 (Ky. 1998). Because Plaintiffs allege facts sufficient to support an award of punitive damages, the damage element is not futile.

**Proposed Fraud Claim against MMM**

Defendant MMM adopted Bucyrus/Minserco's response, which did not dispute Plaintiffs' proposed claim against MMM for fraud. Plaintiffs argue that the proposed claim is an extension of the original claims of fraud against Bucyrus and Minserco. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); Ky. R. Civ. P. 9.02(c). Thus, it is necessary for Plaintiffs to amend their complaint against MMM to allege fraud with particularity.

## CONCLUSION

Accordingly, and for the foregoing reasons, **IT IS ORDERED:**

That Plaintiff's Motion for Leave to Amend the Complaint [Record No. 50] shall be, and the same hereby is, **GRANTED.**

This the 17th day of March, 2010.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge